IN THE UNITED STATES
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELA COWELL, )<br>)<br>　　　　Plaintiff, )<br>)<br>vs. )<br>) Case No._____<br>ILLINOIS DEPARTMENT OF )<br>HUMAN SERVICES d/b/a CHESTER )<br>MENTAL HEALTH HOSPITAL, )<br>TRAVIS NOTTMEIER, ) TRIAL BY JURY DEMANDED<br>JAIMA KLAUSING, and )<br>JESSICA LAWSON )<br>)<br>　　　　Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff Angela Cowell ("Cowell") by and through her attorney, Shari R. Rhode of the Rhode Law Firm, and for her Complaint against Defendants Illinois Department of Human Services ("IDHS") d/b/a Chester Mental Health Hospital ("CMHH"), Travis Nottmeier ("Nottmeier"), Jessica Lawson ("Lawson") and Jaima Klausing ("Klausing"), states as follows:

## NATURE OF THIS ACTION

This is an action to correct employment practice under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Illinois Human Rights Act ("IHRA"), 775 ILCS, *et seq.*; the Americans with Disabilities Act as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is based on federal questions under 29 U.S.C. §§ 1331 and 2617 and supplemental jurisdiction under 28 U.S.C. 1367.

2. The venue for this action lies in the Southern District of Illinois in that the acts of Defendants that are described herein were committed in the Southern District of Illinois.

3. Cowell has complied with all administrative prerequisites by filing a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and cross-filed said charge with the Illinois Department of Human Rights ("IDHR") and filing this action within 90 days of receiving a Right to Sue from the Department of Justice dated February 18, 2021.

## PARTIES

4. At all times relevant herein, Cowell was and is a resident of Willisville, Illinois and an employee of IDHS Division of Mental Health working at the CMHH.

5. Cowell is a qualified individual with multiple disabilities that substantially affect her major life activities.

6. At all times relevant herein, IDHS was and is an agency of the State of Illinois which operates the CMHH.

7. At all times relevant herein, IDHS was and is an employer within the meaning of Title VII.

8. At all times relevant herein, IDHS was and is an employer within the meaning of the IHRA.

9. At all times relevant herein, IDHS was and is an employer within the meaning of the FMLA.

10. Nottmeier is, and at times relevant hereto, was the Hospital Administrator at CMHH and acted directly in the interest of IDHS.  Nottmeier is an employer within the meaning of the FMLA.

11. Klausing is, and at times relevant hereto the Chief Social Worker at CMHH and acted directly in the interest of IDHS. Klausing is an employer within the meaning of the FMLA.

12. Lawson is, and at times relevant hereto a decision-maker in Labor Relations and Human Resources Department at CMHH and acted directly in the interest of IDHS. Lawson is an employer within the meaning of the FMLA.

## GENERAL FACTS

13. Cowell began her employment with the Illinois Department of Corrections at Menard in Chester, Illinois in 1999.

14. After multiple promotions, Cowell now holds the position of Forensic Coordinator/Admissions and Discharge Coordinator at CMHH.

15. Cowell's job duties include coordination of both civil and forensic admissions to jails.

16. Cowell serves as liaison with the courts, public defenders and state's attorney.

17. Cowell's job requires her to coordinate with the Hospital Administrator, Assistant Facility Director, Unit Directors, Business Administrators and other administrative staff in the planning development and implementation of programs, activities and procedures regarding admission and discharge policies and procedures.

18. Cowell's position requires her to draft memos, reports and other documents related to patients readiness and possible preparation for release.

19. Cowell's position requires her to assign and review work of other staff.

20. Cowell was sexually harassed, emotionally abused, and retaliated against by a former Medical Director at CMHH both in and outside of her workplace for approximately one (1) year including time in 2020.

21. Cowell reported the harassment, hostile environment and retaliation described in paragraph 20 to Nottmeier in June 2020.

22. Nottmeier did nothing to address Cowell's report as described in paragraph 21 except to continually express the importance of this Medical Director.

23. On information and belief, at least two (2) female nurses at CMHH were subjected to a hostile environment by the same former Medical Director.

24. The two (2) female nurses reported the former Medical Director's hostile and retaliatory conduct to Nottmeier.

25. Nottmeier failed to take any corrective action so the situation only got worse for these two (2) female nurses.

26. On information and belief, these two (2) female nurses quit because neither Nottmeier nor anyone else at IDHS addressed the hostile and retaliatory environment at CMHH.

27. The former Medical Director approached various IDHS staff members; bullying and threatening them in an effort to prevent their support of Cowell.

28. The former Medical Director intimidated Cowell in an effort to prevent her from reporting him to CMHH, IDHS and/or the Illinois Bureau of Civil Affairs.

29. Nottmeier chastised Cowell for attempting to get the Medical Director in trouble.

30. Cowell filed a charge of sexual discrimination, harassment, retaliation and disability discrimination with the EEOC, which was cross-filed with IDHR, in August 2020.

31. On information and belief, the Medical Director was finally discharged.

32. After the Medical Director was terminated, Nottmeier, Klausing and Lawson repeatedly took adverse action affecting Cowell's job duties by doing things such as but not limited to taking away job duties and excluding her from meetings she needed to attend to do her

4

job.

33. Nottmeier, Klausing and Lawson intentionally made Cowell's work environment more and more difficult with the intent to get her to quit.

34. When Cowell complained to Lawson, she (Lawson) said in front of Dr. Van, the new Medical Director at CMHH and others that if Cowell did not like what Defendants were doing, she could just quit and she (Lawson) could have her job filled in a day.

35. Cowell repeatedly asked Nottmeier himself to stop excluding her from these meetings but he did nothing.

36. Klausing repeatedly tried to humiliate and intimidate Cowell in front of other staff, including Nottmeier and the new Medical Director, Dr. Van.

37. Klausing warned a new employee not to talk to or associate with Cowell.

38. Cowell repeatedly asked Nottmeier to stop Klausing from excluding her from meetings, humiliating and intimidating her but he did nothing.

39. Nottmeier refused to stop Klausing's retaliatory and intimidating behavior.

40. As the pandemic increased, Plaintiff repeatedly requested working remotely as an accommodation for her disabilities.

41. On or about July 21, 2020, Cowell gave Nottmeier and Lawson a Request to Work Remotely with a physician's note dated July 14, 2020, that supported her request to work remotely.

42. The signed doctor's note specifically said Cowell was under the doctor's care for "treatment of autoimmune disease [and] [s]he is high risk for severe complications from Covid infections."

43. Even after receiving her doctor's note, IDHS and Lawson in particular refused to allow Cowell to work remotely.

44. Lawson refused to consider Cowell's request to work remotely until she disclosed her actual diagnosis/or condition.

45. Cowell was therefore forced to specifically disclose her autoimmune disorder as lupus.

46. Lupus is an autoimmune disease which causes Cowell painful flare ups which have been exacerbated by the conduct of Defendants described in this Complaint.

47. Cowell's treatment for lupus requires intermittent infusions which are performed in St. Louis on a monthly basis.

48. Cowell submitted paperwork to Defendants documenting she has multiple serious medical conditions in addition to lupus, which affect multiple major life activities.

49. Cowell provided Defendants with documentation that she is under the care of physicians in specialties including rheumatology, neurology, and gastroenterology.

50. IDHS still refused to allow Cowell to work remotely.

51. Defendants allowed others without disabilities to work remotely.

52. Cowell requested flextime to allow her to work the same amount of hours in a day but start earlier on approximately one day a month so she could make monthly infusion treatments for lupus in St. Louis without losing pay, vacation, sick or FMLA benefits.

53. Cowell asked to use flextime instead of having to use her limited FMLA time, other paid benefits, or time off without pay to get her infusions, but Defendants refused.

54. Other employees without disabilities have been allowed to use flextime.

55. IDHS ignored its obligation to Cowell under a Collective Bargaining contract in place at this time which required IDHS to implement flex-time "to the fullest extent practicable".

56. IDHS retaliated against Cowell by denying her flex-time because she engaged in protective activity under Title VII, the ADA, ADAAA and IHRA.

57. Cowell was forced to use her limited FMLA time because Defendants refused to allow Cowell flex-time.

58. Cowell has been forced to use FMLA leave, other accrued paid benefits, or take unpaid leave instead of the reasonable accommodation of flextime.

59. Cowell has had to forego certain medical treatment because of the soon to be exhausted FMLA benefits.

60. Cowell presently has only four (4) days of FMLA leave available for the calendar year 2021.

61. Cowell also had spinal issues which caused her significant pain.

62. Cowell's physician prescribed a standing desk to accommodate this condition.

63. Cowell provided Defendants medical documentation of the need for a standing desk as a reasonable accommodation.

64. Cowell repeatedly requested a standing desk beginning by at least the early summer of 2020.

65. Defendants repeatedly refused to provide the standing desk.

66. After repeated denial for a standing desk, Cowell filed a grievance with the Bureau of Accessibility and Job Accommodation ("BAJA") regarding this request.

67. BAJA denied the request for a standing desk on December 1, 2020.

68. Cowell appealed the BAJA denial to the IDHS Secretary.

69. The Secretary issued an Administrative Decision dated March 8, 2021, which reversed BAJA denial of the sit/standing desk as a reasonable accommodation.

70. It took IDHS approximately six (6) weeks to get Cowell the sit/standing desk approved by the IDHS secretary on March 8, 2021.

71. As a result of Defendants discriminatory actions, Cowell has suffered both physically and emotionally and financially.

72. As a result of Nottmeier's, Lawson's, and Klausing's mistreatment and retaliation despite their individual knowledge of her disabilities, including but not limited to lupus, Cowell has and increasingly continues to experience:

    a) increasing stress;

    b) anxiety;

    c) feelings of alienation

    d) feelings of helplessness;

    e) fear for her health and safety

    f) loss of sleep;

    g) migraines; and

    h) focal seizures.

73. Cowell has and continues to have to seek professional medical and psychological attention to address the condition she has suffered as a result of Nottmeier's, Lawson's, and Klausing's conduct.

## COUNT I

### SEXUAL DISCRIMINATION AND RETALIATION AGAINST DEFENDANT IDHS IN VIOLATION OF TITLE VII AND IHRA

74. Cowell incorporates paragraphs 1-73 as a fully set forth and incorporated herein.

75. The former medical director at CMMH created a severe or pervasive work environment for Cowell.

76. Cowell repeatedly advised IDHS of the former Medical Director's sexually harassing conduct against her.

77. Rather than take any corrective action, IDHS retaliated against Cowell for making complaints of being sexually harassed and being subjected to a sexually hostile work environment by the then Medical Director at CMHH.

78. As a direct result of Defendant's conduct, Cowell suffered and will continue to suffer lost wages and other economic benefits of employment, as well as emotional distress and loss of enjoyment of life.

79. As a direct result of Defendant's conduct, Cowell has incurred and will continue to incur attorney's fees, costs and other expenses in connection with this matter.

WHEREFORE, Plaintiff Cowell respectfully requests this Court to enter judgment in favor of Plaintiff Cowell and against Defendant IDHS as follows:

a) That a finding that IDHS intentionally discriminated and retaliated against Cowell in violation of Title VII and the IHRA;

b) That Plaintiff Cowell be awarded all wages, benefits, and compensation lost due to IDHS' unlawful conduct, including back pay and all future pecuniary losses;

c) That Plaintiff Cowell be awarded compensatory damages for pain and suffering, loss of enjoyment of life, damage to reputation, and humiliation in amounts to be determined at trial;

d) That Plaintiff Cowell be awarded prejudgment interest;

e) That Plaintiff Cowell be awarded reasonable attorney's fees and costs, and;

f) That Plaintiff Cowell be awarded such other relief as this Court may deem just and proper.

## COUNT II

### DISABILITY DISCRIMINATION AGAINST DEFENDANT IDHS IN VIOLATION OF ADA AS AMENDED AND IHRA

80. Cowell incorporates paragraphs 1-73 as a fully set forth and incorporated herein.

81. The ADA prohibits a covered entity from discriminating against a qualified individual on the basis of disability regarding terms, conditions, and privileges of employment.

82. The IHRA prohibits an employer from discriminating against an individual with physical and/or mental disabilities unrelated to that persons ability to perform the job in question.

83. At all relevant times, Cowell is a qualified person with a disability as defined by the ADA.

84. At all relevant times, Cowell is a qualified person with a disability as defined by the IHRA.

85. Cowell made repeated requests for reasonable accommodations from Defendants, including using flex-time, working remotely, and standing desk.

86. Defendant repeatedly refused to reasonably accommodates to Cowell's disabilities.

87. Defendant repeatedly refused to reasonably accommodates in retaliation for Cowell's protected activities.

88. Defendant gave accommodations to other employees without disabilities.

89. As described above, Defendant IDHS engaged in disability discrimination in the terms and conditions of Cowell's employment in violation of the ADA.

90. As described above, Defendant IDHS engaged in disability discrimination in the terms and conditions of Cowell's employment in violation of the IHRA.

91. As a direct result of IDHS's conduct, Cowell suffered and will continue to suffer lost wages and other economic benefits of employment, as well as emotional distress and loss of enjoyment of life.

92. As a direct result of IDHS's conduct, Cowell has incurred and will continue to incur attorney's fees, costs and other expenses in connection with this matter.

WHEREFORE, Plaintiff Cowell respectfully requests this Court to enter judgment in favor of Plaintiff Cowell and against Defendant IDHS as follows:

a) That a finding be entered that IDHS intentionally discriminated and retaliated against Cowell in violation of the ADA;

b) That a finding be entered that IDHS intentionally discriminated and retaliated against Cowell in violation of IHRA;

c) That Plaintiff Cowell be awarded all wages, benefits, and compensation lost due to IDHS' unlawful conduct, including back pay and all future losses;

d) That plaintiff Cowell be awarded compensatory damages for pain and suffering, loss of enjoyment of life, damage to reputation, and humiliation in amounts to be determined at trial;

e) That Plaintiff Cowell be awarded prejudgment interest;

f) That Plaintiff Cowell be awarded reasonable attorney's fees and costs, and;

g) That Plaintiff Cowell be awarded such other relief as this Court may deem just and proper.

## COUNT III

## FMLA INTERFERENCE AGAINST ALL DEFENDANTS

93. Cowell incorporates paragraphs 1-73 as a fully set forth and incorporated herein.

94. Cowell is an eligible employee under the FMLA.

95. Each Defendant is an employer as that term is defined by FMLA.

96. The FMLA prohibits employers from interfering with FMLA rights.

97. Defendants forced Cowell to use limited FMLA time otherwise available to her when it should have allowed her to use flex-time which would have allowed Cowell to receive her infusions without the loss of pay or use of other employment benefits.

98. Defendants engaged in willful disregard of Cowell's rights under the FMLA, thereby warranting liquidated damages.

WHEREFORE, Cowell requests the following relief:

a) Enter judgment in Cowell's favor and against Defendants, jointly and severely, for lost wages, employment benefits, and other compensation;

b) Enter judgment in Cowell's favor and against each Defendant for an equal amount in liquidated damages;

c) An award to Cowell of reasonable attorney's fees and costs; and

d) An award of such other and further relief as this Court deems just and equitable.

## COUNT IV

## INTENTIONAL AND/OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS NOTTMEIER, LAWSON AND KLAUSING

99. Cowell incorporates paragraphs 1-73 as a fully set forth and incorporated herein.

100. By virtue of the foregoing, Defendants Nottmeier, Lawson, and Klausing acted in concert with the intent to cause Cowell severe emotional distress.

101. Defendants Nottmeier, Lawson, and Klausing were well aware of Cowell's particular vunerabilty given the pattern of harassment and retaliation despite her known disabilities.

102. Defendants Nottmeier, Lawson, and Klausing used her disabilities as an additional weapon to increase the destructive effect of their actions upon Cowell's emotional health.

103. Defendants Nottmeier, Lawson, and Klausing abused their position of authority as part of their retaliation.

104. Defendants Nottmeier, Lawson, and Klausing's conduct was extreme and outrageous.

105. The result of Defendants Nottmeier, Lawson, and Klausing's conduct cause Cowell severe emotional distress.

106. By virtue of the foregoing, Defendants Nottmeier, Lawson, and Klausing are each liable for common law intentional and/or reckless infliction of emotional distress.

107. As a result of Defendants Nottmeier, Lawson, and Klausing's conduct Cowell has suffered damages of a pecuniary and non-pecuniary nature.

108. Defendants Nottmeier, Lawson, and Klausing were acting to cause Cowell severe emotional distress in an effort to cause her constructive discharge.

109. Given the concerted efforts of Defendants Nottmeier, Lawson, and Klausing to cause Cowell's severe emotional distress, their violations were willful and wonton warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Cowell respectfully requests that this Honorable Court to enter judgment in her favor and against Defendants Nottmeier, Lawson, and Klausing, jointly and

severely, for emotional distress and punitive damages, as well as litigation expenses, and for such other relief as this Court deems just and/or equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted
Angela Cowell, Plaintiff

By:  /s/ Shari R. Rhode
Shari R. Rhode, Attorney for Plaintiff
Bar No. 2324598
Rhode Law Firm
1405 West Main Street
Carbondale, IL 62901
Phone: 618.549.4287
Fax: 618.549.4343
Email: shari@rhodelawfirm.com