IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELA COWELL,<br><br>       Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF HUMAN SERVICES, d/b/a, Chester Mental Health Hospital, TRAVIS NOTTMEIER, JAIMA KLAUSING, and JESSICA LAWSON,<br><br>       Defendants. | Case No. 3:21-CV-478-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Angela Cowell filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Illinois Human Rights Act ("IHRA") 775 ILCS, *et seq.*, the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Doc. 1). Defendants now move the Court to dismiss certain claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 22). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

The following facts alleged by Cowell are accepted as true for purposes of Defendants' motion to dismiss. Cowell began her employment with the Illinois Department of Corrections in 1999 (Doc. 1, ¶ 13). Over time, Cowell received several promotions and now works within the Illinois Department of Human Services ("IDHS") Division of Mental Health at Chester

Mental Health Hospital ("Chester") (*Id.* at ¶ 14). Cowell alleges that a former Medical Director at Chester sexually harassed, emotionally abused, and retaliated against her in and out of the workplace for one year while working in concert with other employees to bully, threaten, and silence Cowell or any supporters (*Id.* at ¶¶ 20, 27-28). In June 2020, she reported the harassment to Travis Nottmeier, Chester's Hospital Administrator, who allegedly did not address the report except to emphasize the importance of the Medical Director and rebuke Cowell for reporting him (*Id.* at ¶¶ 21-22, 29). Two other female nurses allegedly quit after reporting similar conduct to Nottmeier to no avail (*Id.* at ¶¶ 23-26).

In August 2020, Cowell filed a Charge of Sexual Discrimination, Harassment, and Disability Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") (*Id.* at ¶ 30). Cowell alleges that the Medical Director was finally terminated, but Nottmeier, along with Jaima Klausing, the Chief Social Worker, and Jessica Lawson, a Labor Relations and Human Resource Department decision-maker at Chester, took adverse actions against Cowell by eliminating her job duties, excluding her from relevant meetings, humiliating her in front of other staff, and reminding her that she was easily replaceable (*Id.* at ¶¶ 31-32, 34, 36). Cowell alleges that they intentionally created a difficult work environment to force her to quit (*Id.* at ¶ 33).

During this time, Cowell requested to work remotely or use "flex-time" as an accommodation for her disability (*Id.* at ¶¶ 40, 52-53). As the pandemic worsened, Cowell's autoimmune disease placed her at a high risk for complications from a Covid infection (*Id.* at ¶¶ 40, 42). She provided documentation and doctor's notes but was ultimately forced to reveal her condition as lupus in order to be considered for remote work (*Id.* at ¶¶ 41-49). Cowell alleges that IDHS continually refused her requests while allowing others without

disabilities to work remotely and use "flex-time" (*Id.* at ¶¶ 50, 51, 54). She was left to rely solely on FMLA leave, which caused her to forego certain medical treatment because her benefits exhausted (*Id.* at ¶ 59). Cowell's physician prescribed a standing desk to accommodate another disability, her painful spinal condition, which the IDHS Secretary later deemed a reasonable accommodation (*Id.* at ¶¶ 62-69). It took six weeks, however, for Cowell to receive the equipment once approved (*Id.* at ¶ 70).

On May 13, 2021, Cowell filed a Complaint asserting four counts. Count I is a claim against IDHS for sexual discrimination under Title VII and the IHRA for subjecting Cowell to a hostile work environment and retaliation for reporting sexual harassment. Count II is a claim against IDHS for disability discrimination in violation of the ADA and the IHRA. In Count III, Cowell alleges all Defendants interfered with her rights under the FMLA. Finally, Count IV alleges intentional or reckless infliction of emotional distress against Defendants Nottmeier, Klausing, and Lawson. Cowell alleges physical, emotional, and financial injuries.

## Discussion

### I.  Counts I & II – IHRA Claims Against Defendant IDHS

IDHS first moves to dismiss the portions of Counts I and II brought under the IHRA because such claims are barred by Sovereign Immunity and the Eleventh Amendment. IDHS argues that Congress has not abrogated the state's immunity, nor has IDHS waived its immunity or consented to suit by Cowell in federal court. Cowell agrees and seeks to strike the portions of Counts I and II which claim relief under the IHRA. The motion to dismiss is granted with respect to the claims in Count I and II that seek recovery under the IHRA. The Court grants Cowell leave to amend her complaint to eliminate these portions of Counts I and II.

## II.     Count III – FMLA Claim Against Defendants Nottmeier, Klausing, and Lawson

Defendants Nottmeier, Klausing, and Lawson argue that Cowell's FMLA claim in Count III should be dismissed because the FMLA's plain language only imposes individual liability on private, not public employees. In the alternative, Defendants argue that, even if Cowell can bring an FMLA claim against individual Defendants, Count III should be dismissed because she has failed to state a claim upon which relief can be granted. Cowell argues that the FMLA does allow claims against individual public employees, and further, that she has properly alleged claims against each individual Defendant to substantiate a claim of FMLA interference against them.

Cowell brought Count III against IDHS as well, but IDHS does not seek to dismiss this claim, just the individual Defendants. Moreover, both parties acknowledge that the Seventh Circuit has not yet ruled on this issue, but the Third, Fifth, and Eighth Circuits have held that the FMLA does apply to public employees, and the Sixth and Eleventh Circuits have held the opposite.

The FMLA definition for employer is:

(A) In general. The term "employer" —

> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes —
>
> > (I)  any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> >
> > (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title;

and

>    (iv) includes the [GAO] and the Library of Congress.

29 U.S.C. § 2611(4)(A).

The Act defines as an employer "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," as well as "any public agency." 29 U.S.C. § 2611(4)(A)(ii)-(iii). The interpretation of this statutory provision regarding individual liability of public agency supervisors or officials has resulted in a circuit split.

Defendants urge the Court to follow the Sixth Circuit's approach in applying the textual analysis of the FMLA's structure to conclude the statute does not impose individual liability on public agency employees. *See Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003). The Sixth Circuit looked at the interrelationship among the clauses (i)–(iv), including a lack of punctuation, and concluded that § 2611(4)(A)(ii), the individual liability provision, and § 2611(4)(A)(iii), the public agency provision, are separate and distinct, and commingling them leads to certain provisions being superfluous. Finally, the Sixth Circuit compared the FMLA to the Fair Labor Standards Act ("FLSA") to support its structural reading of § 2611(4)(A). *Id.*

With issues of statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). To do so, courts look to the particular statutory language at issue as well as the "language and design of the statute as a whole." *Bethesda Hospital Assn. v. Bowen*, 485 U.S. 399, 405 (1988).

A plain reading of § 2611(4)(A)(ii)(I) demonstrates that individuals who act, directly or indirectly, in the interest of an employer are included under the definition of employer. Clearly, individuals, distinct from the employer itself, are encompassed in the definition, and

thus, are subject to liability under the FMLA. *See Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (holding that § 2611(4)(A)(ii)(I) "plainly includes persons other than the employer itself"). This reading certainly extends to employees of private employers. The crux of the inquiry, here, is whether employees of public entities are subject to individual liability.

The presence of § 2611(4)(A)(iii), which includes "any public agency" in the definition of "employer," does not lead to the inference that public agency employees are excluded from the individual liability provision in § 2611(4)(A)(ii). "[A]ny public agency," instead, is likely included to explicitly abrogate Eleventh Amendment sovereign immunity under the FMLA. *See Barnes v. LaPorte County*, 621 F. Supp. 2d 642, 644-46 (N.D. Ind. 2008). If an individual meets the definition of employer as defined by § 2611(4)(A), then that person should be subject to liability in his individual capacity. There seems to be no reason to differentiate between employers in the public and private sectors. *See Cooley v. Board of Educ. of the City of Chicago*, 703 F. Supp. 2d 772, 773-74 (N.D. Ill. 2009) (quoting *Darby*, 287 F.3d at 681 (8th Cir. 2002)).

Further, Seventh Circuit precedent under the FLSA, a similar statute, suggests that the FMLA could impose individual liability in the public sector. The definition of "employer" under the FLSA is similar in substance to the definition in the FMLA. The FLSA also defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). In *Luder v. Endicott*, the Seventh Circuit determined that a public official could be sued in his individual capacity under the FLSA. 253 F.3d 1020, 1022 (7th Cir. 2001). While *Luder* does not directly resolve the statutory interpretation question under the FLSA's definition of employer (which mirrors the FMLA definition), it does support conclusion that individual liability can be imposed on

public sector supervisors under that statute.

The Court is persuaded that the FMLA's plain language allows for individual liability within the public sector, just as in the private sector. Thus, Defendant's motion to dismiss in denied on this ground.

Next, Defendants argue that Cowell merely makes conclusory allegations that each of them "acted directly in the interest of IDHS" and, thus, fails to allege specific facts to support her claim that Defendants constitute her employer under the FMLA and to show that they interfered with her FMLA rights.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To avoid dismissal, the complaint must 'state a claim to relief that is plausible on its face.'" *BancorpSouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To state a claim of FMLA interference, a plaintiff must show: (1) she was eligible for FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Ames v. Home Depot U.S.A,*

*Inc.*, 629 F.3d 665, 668–69 (7th Cir. 2011) (internal quotations omitted). Interference is not limited to simply denying leave, rather, it encompasses using the taking of FMLA leave as a negative factor in employment actions and discouraging an employee from taking FMLA leave. *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 818 (7th Cir. 2015).

Here, Cowell has alleged facts sufficient to state a claim for interference. Cowell alleges that she has a serious auto-immune condition. She states that she provided proof of her medical condition and her need for ongoing treatment to Defendants, her supervisors and a Human Resources department decision-maker. She also alleges that instead of being able to use "flex-time" like other employees, she was forced to use her limited FMLA time. At the pleading stage, these allegations are enough to create a plausible claim for relief.

Thus, the motion to dismiss Count III as to the individual defendants is denied.

**III.**    **Count IV – Intentional/Reckless Infliction of Emotional Distress against Defendants Nottmeier, Klausing, and Lawson**

Defendants Nottmeier, Klausing, and Lawson argue that the Court should dismiss Count IV because it is barred by state law sovereign immunity and is preempted by the Illinois Human Rights Act ("IHRA"). Also, Defendants assert that Cowell's claim for punitive damages must be dismissed. Cowell argues that being a state employee does not prevent a claim of intentional or reckless infliction of emotional distress whether the individual acted alone or in concert with other state employees to harass and retaliate against another state employee. Further, Cowell contends that the IHRA does not preempt the claims in Count IV because her claims are not based solely on claims covered in the IHRA. Cowell also asserts that she only pursued punitive damages in Count IV against the individual Defendants and that she adequately pleaded the required malice or willful and wanton conduct.

First, Defendants argue that Count IV is barred by sovereign immunity. An agent's conduct will be attributed to the state for purposes of sovereign immunity if: (1) there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) ... the alleged actions involve matters ordinarily within that employee's normal and official functions of the State. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)). Moreover, sovereign immunity does not afford protection "when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Id.*

Here, while Cowell alleges that all three individual Defendants "acted directly in the interest of IDHS" pursuant to some of her claims, some of the actions alleged are certainly outside the scope of their official functions. Defendants argue that because Cowell fails to allege personal animosity against her, the emotional distress claim is actually an action against the State. The allegations, however, do create an inference of personal animosity as Cowell alleges that the individual Defendants eliminated her job duties, excluded her from relevant meetings, humiliated her in front of other staff, conveyed to her that she was easily replaceable, and allowed other staff members to work from home while denying Cowell the opportunity, especially during a pandemic knowing her status as potentially immunocompromised. Thus, the Court denies the motion to dismiss relating to Sovereign Immunity.

Next, Defendants argue that intentional infliction of emotional distress claims are preempted by the IHRA, which gives the Illinois Human Rights Commission exclusive

jurisdiction over civil rights violations. 775 ILCS 5/8–111(C). A violation of the IHRA includes employment discrimination based on sex or handicap. 775 ILCS 5/1–103(I), (O), (Q); *Id.* 5/1–102(A). Employment discrimination, as a civil rights violation, is defined as employer acts with respect to "promotion, renewal of employment ... discharge, discipline, ... privileges or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2–102(A). The Seventh Circuit has held that claims of intentional infliction of emotional distress can be preempted by the IHRA when the core of the tort claim is based on the underlying discrimination. *See Smith v. Chicago Sch. Reform Bd.*, 165 F.3d 1142, 1151 (7th Cir. 1999); *Quantock v. Shared Mktg. Servs. et al.*, 312 F.3d 899, 902, 905 (7th Cir. 2002). If the conduct alleged would be actionable aside from its character as a civil rights violation (i.e., the IHRA did not furnish the legal duty that the defendant allegedly breached), the IHRA does not preempt a state law claim seeking recovery for it. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

The Court must assess whether Cowell can prove the elements of intentional infliction of emotional distress independent of the legal duties furnished by the IHRA. Here, Cowell alleges that Defendants engaged in a pattern of conduct, such as eliminating her job duties, excluding her from relevant meetings, humiliating her in front of other staff, reminding her that she was dispensable, creating a difficult work environment to force her to quit, and denying her the ability to work from home during the pandemic knowing she was immunocompromised. This alleged behavior toward Cowell could be actionable in tort apart from the general duty as an employer not to discriminate in the workplace under the IHRA. Thus, the Court denies the motion to dismiss on the ground that Count IV is preempted by the IHRA.

Lastly, as to punitive damages, Defendants argue that Cowell's allegations do not sufficiently state and give rise to an inference of willful and wanton conduct. The Court disagrees. Under Illinois law, punitive damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. *Parker v. Four Seasons Hotels, Limited*, 845 F.3d 807, 812 (7th Cir. 2017). Considering the same facts and inferences referenced above, Cowell sufficiently alleges a plausible claim that Defendants acted with malice, willful, or wanton conduct. The motion to dismiss is denied as to punitive damages.

## Conclusion

For these reasons, the Motion to Dismiss filed by Defendants (Doc. 22) is **GRANTED in part and DENIED in part**. Counts I and II are **DISMISSED** as to the IHRA claims, and Cowell is granted leave of **14 days** to amend Counts I and II to remove those portions. The motion is **DENIED** in all other respects.

This case shall now proceed on Count I and II against Defendant IDHS with the exception of the claims relating to the IHRA, Count III against all Defendants, and Count IV against Defendants Nottmeier, Klausing, and Lawson.

**IT IS SO ORDERED.**

DATED: March 30, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**